# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RAYSHAWN DOUGLAS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-0610 (ESH) |
| DISTRICT OF COLUMBIA HOUSING AUTHORITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Rayshawn Douglas has sued the District of Columbia Housing Authority ("DCHA"), William Pittman, and Jessee Millhouse, alleging violations of her rights guaranteed under the Fourth Amendment of the United States Constitution, the Rehabilitation Act, and the District of Columbia Whistleblower Protection Act. Before the Court is defendants' Motion to Dismiss plaintiff's First Amended Complaint, as well as plaintiff's Motion to Amend that complaint, which defendants oppose. For the reasons stated below, defendants' motion to dismiss will be granted, and plaintiff's motion to amend will be denied.

## FACTUAL BACKGROUND[1]

Plaintiff Rayshawn Douglas has been employed by DCHA since 1998. (*See* First Amd. Compl. ("FAC"), June 3, 2013 [Dkt. No. 11] 4-5.) On Friday, October 15, 2010, plaintiff and Ms. Leslie Bilbrue, another DCHA employee, had an altercation near DCHA's North Capital Street location. (*Id.* at 5.) The altercation allegedly began when Ms. Bilbrue threw a rolled-up

---

[1] A significant portion of plaintiff's First Amended Complaint solely pertains to plaintiff's state-law claim, over which the Court will not exercise supplemental jurisdiction. As those allegations are irrelevant to the Court's resolution of plaintiff's federal-law claims, the Court does not recount them here.

1

paper towel at plaintiff through the open passenger window of plaintiff's car. Plaintiff responded by throwing a cup of fruit juice out the window at Ms. Bilbrue. (*Id.*)

On Monday, October 18, 2010, Ms. Bilbrue reported to a DCHA police officer that plaintiff had thrown antifreeze at her face. (*Id.* at 6.) Officer Kimberly Crosby-Scott submitted a sworn affidavit to a D.C. Superior Court judge in support of a warrant to arrest plaintiff for assault with a dangerous weapon. The judge issued the warrant for plaintiff's arrest. (*Id.*; Compl., Arrest Warrant, and Aff. in Support of an Arrest Warrant, Oct. 18, 2010 [Dkt. No. 11-3] at 1-2.)

The next day, DCHA Police Lieutenant Jesse Millhouse and two other officers arrested plaintiff outside DCHA headquarters. (FAC at 6.) Plaintiff was released from police custody the next evening. (*Id.* at 7.) Prosecutors charged plaintiff in Superior Court with assault and possession of a prohibited weapon. (*Id.*; Information, Oct. 20, 2013 [ Dkt. No. 11-4] at 1.)

Plaintiff did not return to work until some point in November 2010. (FAC at 7.) At that point, plaintiff learned from a union official that Ms. Bilbrue had accused plaintiff of verbally harassing her. Plaintiff denied the charge and presented the official with a witness who supported her denial. The official never interviewed the witness. (*Id.*)

On December 10, 2010, plaintiff's second charge was reduced from "possession of a prohibited weapon" to "attempted possession of a prohibited weapon." (*Id.* at 8.) On January 10, 2011, plaintiff pled guilty to simple assault and attempted possession of a prohibited weapon. (*Id.*) Plaintiff's plea and deferred sentencing agreement required her to avoid Ms. Bilbrue, to complete forty hours of community service, and to enroll in anger management classes. (Plea Agreement and Deferred Sentencing Agreement, Jan. 10, 2011 [Dkt. No. 14-2] at 2-3.) Under the agreement, plaintiff's sentencing was deferred for nine months. (*Id.* at 2.)

Plaintiff's experience of being arrested, prosecuted, and returning to an unfriendly work environment "deeply disturbed and bothered" her. (FAC at 8.) Prior to this incident with Ms. Bilbrue, plaintiff occasionally had sought therapy through the C.O.P.E., an employee assistance program. After the incident, she began to visit C.O.P.E. more frequently. In early 2011, plaintiff met with DCHA Executive Director Adrianne Todman. Plaintiff informed Ms. Todman that the arrest, prosecution, and her return to an unfriendly workplace climate made her feel as though she were "going crazy." Ms. Todman responded that "No one just goes crazy." Throughout 2011, plaintiff's supervisor, Dena Michaelson, observed plaintiff in various states of visible distress. (*Id*. at 9.)

Between April and July 2011, Ms. Bilbrue approached plaintiff and pointed a finger in her face. Plaintiff reported the incident to, among others, DCHA Police Chief William Pittman. Soon after reporting this incident, plaintiff was instructed not to visit the office in which Ms. Bilbrue worked. (*Id.* at 10.)

In July 2011, plaintiff claimed that she had been threatened by Alicia Robinson, another DCHA employee. (*Id.*) Plaintiff reported the incident to Robinson's supervisor, but no report was filed. (*Id.* at 11.)

On August 4, 2011, plaintiff was called into a meeting by the DCHA's Deputy Director of Human Resources, Sabrina Hayes. Ms. Hayes informed plaintiff that Ms. Robinson had filed a written complaint against plaintiff, alleging that in May 2011 plaintiff had rolled her eyes and gritted her teeth at Ms. Robinson and threatened her in front of over a dozen co-workers. (*Id.* at 11.) Ms. Hayes did not respond when plaintiff asked whether she had questioned the co-workers to confirm Ms. Robinson's allegations, but she did acknowledge that Ms. Robinson admitted to

3

threatening plaintiff in July 2011. Ms. Hayes then told plaintiff that she had "no reason" to feel threatened by Ms. Robinson's comments or demeanor. (*Id.* at 12.)

That same day, plaintiff called another co-worker, Aaron Prue, to discuss her meeting with Ms. Hayes. (*Id.*) After the telephone call, plaintiff wanted to continue the conversation in person and went to a parking lot where she believed she would find Mr. Prue. (*Id.*) Plaintiff approached the vehicle in which Mr. Prue was sitting, but due to the vehicle's tinted windows, she could not see that Ms. Bilbrue was in the driver's seat. (*Id.* at 12-13.) Seconds after plaintiff approached the vehicle, Ms. Bilbrue sped away. (*Id.* at 13.) Later that day, Ms. Bilbrue filed a written complaint with DCHA Police alleging that plaintiff stalked and harassed her in the parking lot by screaming while approaching the car and then beating on the car's windows until she sped away. Ms. Bilbrue further alleged that plaintiff had been stalking her since January 2011. (*Id.*; *see* Written Statement of Leslie Bilbrue, August 4, 2011 [Dkt. No. 10-6].)

The next day, August 5, 2011, plaintiff was suspended from work without pay and was removed from the DCHA premises by DCHA Police officers. (FAC at 14.) For the next few weeks, plaintiff could not enter the DCHA premises without specific authorization, and when she was required to enter, she could only do so with an escort from the DCHA Police. (*Id.*)

On August 26, 2011, plaintiff was called back to DCHA to meet with Human Resources Director Paulette Campbell. (*Id.* at 15.) Ms. Campbell told plaintiff that "everyone was disappointed by [her] actions" and that "everyone had given up on" her. Plaintiff asked Ms. Campbell what actions she believed plaintiff had taken. Ms. Campbell responded that the fact that plaintiff did not know which actions she meant "scared her" because it signaled that plaintiff would do "it" again. Ms. Campbell then asked plaintiff whether she "had seen a mental health professional recently, because 'a medical condition might possibly be triggering your individual

action.'" (*Id.*) After the meeting, plaintiff was instructed not to contact any offices where Ms. Bilbrue, Ms. Robinson, and Mr. Prue worked. (*Id.* at 16.)

On September 21, 2011, DCHA issued plaintiff a notice of detail to Stoddert Terrace, a housing project that plaintiff considered to be in a dangerous part of town. (*Id.*) Prior to that detail, her responsibilities had included bringing receipts to the payroll department, handling budgets, completing timesheets. At Stoddert Terrace, "she primarily answered telephones." (*Id.*) In December 2011, plaintiff was reassigned from Stoddert Terrace to the DCHA Regional Office. (*Id.* at 18.) On February 2, 2012, plaintiff was demoted from Grade 11, Step 7, to Grade 9, no Step, effective December 6, 2011. (Personnel Action, Feb. 2, 2012 [Dkt. No. 10-20].) The demotion did not decrease plaintiff's salary, but did make her ineligible to receive future step increases. (FAC at 23.) Plaintiff did not learn she had been demoted two grade levels until January 7, 2013. (*Id.* at 22.)

On August 27, 2012, plaintiff filed an eight-count complaint against DCHA, Ms. Bilbrue, and Ms. Robinson, alleging, *inter alia*, that DCHA violated the Rehabilitation Act, 29 U.S.C. § 794, by discriminating against her on the basis of a perceived mental disability when detailing her to Stoddert Terrace in September 2011. *Douglas v. D.C. Housing Auth. et al.*, 12-cv-1418, Dkt. No. 1 (D.D.C. Aug. 27, 2012). After plaintiff did not timely respond to defendants' motion to dismiss, the Court dismissed plaintiff's claims without prejudice. *Douglas v. D.C. Housing Auth. et al.*, 12-cv-1418, Dkt. No. 27 (D.D.C. Dec. 10, 2012). The Court denied plaintiff's motion for reconsideration on January 30, 2013. *Douglas v. D.C. Housing Auth. et al.*, 12-cv-1418, Dkt. No. 30 (D.D.C. Jan. 30, 2013).

On April 30, 2013, plaintiff filed a new complaint. (*See* Compl., April 30, 2013 [Dkt. No. 1]). Two days later, plaintiff was informed that she would again be detailed to Stoddert

Terrace. (FAC at 23-24.) Plaintiff amended her complaint on June 3, 2013. In her First Amended Complaint, plaintiff again alleges, in Count V, that DCHA violated the Rehabilitation Act by discriminating against her on the basis of a perceived mental disability when detailing her to Stoddert Terrace in September 2011. (*Id.* at 33-34.) Further, in Counts I-III, plaintiff alleges that two police officers and the DCHA violated her Fourth Amendment rights by falsely arresting her in August 2010. (*Id.* at 25-28.) Finally, in Count IV, plaintiff alleges that DCHA retaliated against her in violation of the D.C. Whistleblower Protection Act. (*Id.* at 29-32.) Among other forms of relief, plaintiff seeks compensatory, statutory, and punitive damages, reinstatement to her prior position, and an injunction enjoining DCHA from taking further adverse actions against her. (*Id.* at 35.)

Defendants have moved for dismissal of all counts. (Defs.' Mot. to Dismiss ("Mot."), July 3, 2013 [Dkt. No. 14].) After filing her opposition (Pl.'s Amd. Mem. of Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), July 18, 2013 [Dkt. No. 18-1]), plaintiff moved to amend her complaint to add two retaliation claims under the Rehabilitation Act. (Pl.'s Mot. to Amend the Compl., July 18, 2013 [Dkt. No. 17]), and defendants filed an opposition. (Opp'n to Pl.'s Mot. to Amend, August 5, 2013 [Dkt. No. 20].)

## ANALYSIS

### I. RULE 15: LEAVE TO AMEND

Because defendants have not consented to plaintiff amending her complaint a second time, she may amend again "only with . . . the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 instructs courts to "freely give leave [to amend] when justice so requires," *id.,* and the "'rule is to be construed liberally.'" *In re Interbank Funding Corp. Sec. Litig.,* 629 F.3d 213, 218 (D.C.

Cir. 2010) (quoting *Belizan v. Hershon,* 434 F.3d 579, 582 (D.C. Cir. 2006)). In *Foman v. Davis,* 371 U.S. 178 (1962), the Supreme Court instructed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Id.* at 182. "[T]he grant or denial of an opportunity to amend is within [the Court's] discretion . . . ." *Id.* "Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington,* 530 F. Supp. 2d 112, 115 (D.D.C. 2008); *see Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 9 (D.D.C. 2012) ("[T]he party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend.").

In her proposed Second Amended Complaint, plaintiff seeks to bring, as alternatives to Count V, two counts (VI and VII) alleging retaliation under the Rehabilitation Act. (Proposed Second Amd. Compl. ("SAC"), July 18, 2013 [Dkt. No. 17-2] at 34-35.) Other than the addition of Counts VI and VII, the Second Amended Complaint does not allege any additional facts or attach any additional exhibits. Defendants' only argument in opposition of plaintiff's motion to amend is that amendment would be futile because the additional counts in the proposed Second Amendment Complaint "cannot survive a motion to dismiss." (Opp'n to Mot. to Amend at 2). Because review for futility "is, for practical purposes, identical to review of a Rule 12(b)(6)" motion to dismiss, *In re Interbank Funding Corp. Sec. Litig.,* 629 F.3d at 215–16 (internal quotation marks omitted), defendants' futility arguments will be addressed below, in conjunction

with the Court's consideration of defendants' arguments for dismissal. *See Driscoll v. George Washington Univ.*, --- F. Supp. 2d ----, 2012 WL 3900716, *2-3 (D.D.C. Sept. 10, 2012).

## II. RULE 12(B)(6): LEGAL SUFFICIENCY OF ALLEGATIONS

In evaluating a motion to dismiss for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6), the Court is mindful that a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). The notice pleading rules are "not meant to impose a great burden on a plaintiff," *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513–515 (2002)), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion. *Twombly,* 550 U.S. at 555 (citing *Conley,* 355 U.S. at 47). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and her "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

This Court need not accept as true any legal conclusions couched as factual allegations or inferences unsupported by facts in plaintiff's complaint. *Trudeau v. Fed. Trade Comm'n,* 456

F.3d 178, 193 (D.C. Cir. 2006). Yet, in determining whether the factual allegations entitled to an assumption of truth are "enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, the Court must grant "'plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. F.D.I.C.,* 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi,* 394 F.3d 970, 972 (D.C. Cir. 2005)).[2]

In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint, matters about which the Court may take judicial notice, and any documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and are integral to a claim. *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.,* 722 F. Supp. 2d 20, 24 (D.D.C. 2010).

### A.     False Arrest Claims under 42 U.S.C. § 1983 (Counts I-III)

In Count I, plaintiff brings a § 1983 claim against Deputy Police Chief Millhouse, alleging that Millhouse violated her Fourth Amendment rights by (1) submitting an affidavit supporting her arrest that contained information he knew to be false and (2) then arresting her on the basis of an warrant unsupported by probable cause. (FAC at 25-26.) In Counts II-III, plaintiff brings supervisory liability claims against Police Chief Pittman and DCHA for their actions or inactions regarding Count I. (*Id.* at 27-28.)

---

[2] Plaintiff argues that *Twombly* did not mandate a "heightened" pleading standard where speculative factual allegations may be rejected at a motion to dismiss stage (Opp'n at 3-4), citing pre-*Iqbal* Circuit precedent interpreting *Twombly*. *See Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008). The D.C. Circuit has yet to settle whether *Iqbal* extended *Twombly* and thus overruled *Aktieselskabet*. *See Tooley v. Napolitano*, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (refusing to either reject or accept the government's argument that *Iqbal* invalidated *Aktieselskabet*). And this Court need not settle the issue today. For even assuming plaintiff is correct that the Court must accept as true her speculative factual allegations, as demonstrated in text those allegations as a whole do not support a reasonable inference of liability on the part of defendants. *See Iqbal,* 556 U.S. at 678.

Officers Millhouse and Pittman move to dismiss the claims against them based on qualified immunity (Mot. at 6-12), while the DCHA moves to dismiss Count III under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (*Id.* at 12-13.) Aside from a general statement that she "disagree[s] with the Defendant[s] that Counts I, II, and III should be dismissed" (Opp'n at 12), plaintiff provides no rebuttal to defendants' arguments.

It is well-established in this Circuit that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded." *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *FDIC v. Bender,* 127 F.3d 58, 67-68 (D.C. Cir. 1997)); *see also* L. Civ. R. 7(b) ("If [an opposition] memorandum is not filed within the prescribed time, the Court may treat the motion as conceded."); *Twelve John Does v. Dist. of Columbia,* 117 F.3d 571, 577 (D.C. Cir. 1997) ( "Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule."). "The decision to treat a claim as conceded . . . is highly discretionary." *See Hampton v. Gov't of Dist. of Columbia,* 764 F. Supp. 2d 147, 150 n.2 (D.D.C. 2011).

Here, plaintiff, who is represented by counsel, timely filed an opposition to defendants' motion, but did not address defendants' arguments for dismissing Counts I-III. Accordingly, the Court will exercise its discretion to treat defendants' arguments for dismissal of Counts I-III as conceded and dismiss those Counts. *See Shaw v. Dist. of Columbia*, 825 F. Supp. 2d 173, 177-78 (D.D.C. 2011).[3]

---

[3] In the alternative, the Court concludes that plaintiff has failed to state a claim under Counts I-III. Plaintiff has failed to plead facts sufficient to establish that Officer Millhouse obtained the arrest warrant in the first instance, much less that he did so using knowingly false information. (*See* Complaint, Warrant, and Affidavit in Support of an Arrest Warrant, Oct. 18, 2010 [Dkt. No. 10-3] at 2 (showing that the affidavit supporting the warrant was signed by another officer).) Likewise, plaintiff failed to plead facts sufficient to establish that Officer Millhouse otherwise should have known when executing the arrest

B.  **Discrimination under the Rehabilitation Act (Count V)**

In Count V, plaintiff brings a Rehabilitation Act discrimination claim against DCHA alleging that DCHA detailed plaintiff to the Stoddert Terrace Property, a "dangerous housing project," because Ms. Campbell, the DCHA Human Resources Director, thought that plaintiff was "mentally deranged or otherwise mentally ill." (FAC at 33-34.)

An employment discrimination plaintiff "'need not plead each element of [her] prima facie case to survive a motion to dismiss.'" *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 14 (D.D.C. 2008) (quoting *Swierkiewicz*, 534 U.S. at 515); *see also Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) ("[E]mployment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss."). "A plaintiff must, however, plead sufficient facts to show a plausible entitlement to relief." *Rodriguez v. Donovan*, 922 F. Supp. 2d 11, 17 (D.D.C. 2013) (citing *Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 62-63 (D.D.C. 2012)).

The two "essential elements" for a Rehabilitation Act discrimination claim brought pursuant to 29 U.S.C. § 794 are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see also Rosell v. Kelliher*, 468 F. Supp. 2d 39, 44 (D.D.C. 2006) (defining the prima

---

warrant that had been issued by a Superior Court judge that there was no "objectively reasonable basis for believing that the facts and circumstances surrounding the arrest were sufficient to establish probable cause." *See Wardlaw v. Pickett*, 1 F.3d 1297, 1304 (D.C. Cir. 1993).

Further, because plaintiff failed to state a claim for any predicate constitutional violation by Officer Millhouse, plaintiff's supervisory and *Monell* liability claims in Counts II and III fail as well. *See Brown v. Dist. of Columbia,* 514 F.3d 1279, 1283 (D.C. Cir. 2008) ("To determine whether a plaintiff can hold a municipality liable under § 1983, we must answer two questions. First, the court must determine whether the complaint states a claim for a predicate constitutional violation . . . ." (internal quotation marks omitted)); *Haynesworth v. Miller*, 820 F.2d 1245, 1260 (D.C. Cir. 1987) ("The party seeking to impose [supervisory] liability must demonstrate that the official had an obligation to supervise or train the wrongdoer in the manner alleged, that the duty was breached, and that this breach was a proximate cause of the injury.").

facie case). Under the Rehabilitation Act, unlike Title VII or the Americans with Disabilities Act ("ADA"), a plaintiff ultimately "must prove that [her] disability was the 'sole' or 'but-for' reason for the" adverse employment action. *Gard v. U.S. Dep't of Educ.*, 752 F. Supp. 2d 30, 36 (D.D.C. 2010); *see* 29 U.S.C.A. § 794(a) ("No otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability* . . . be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." (emphasis added)).

DCHA argues that plaintiff failed to plead facts sufficient to establish either that she was disabled or that her detail to Stoddert Terrace constituted an adverse employment action. (Mot. at 16-17.) An individual is "disabled" under the Rehabilitation Act if she can show that she (1) has "a physical or mental impairment that substantially limits one or more major life activities," (2) has "a record of such an impairment," or (3) has "been regarded as having such an impairment." 42 U.S.C.A. § 12102(1) (West 2012); *see* 29 U.S.C. § 705(20)(B) (incorporating by reference the definition of "disability" found in 42 U.S.C. § 12102 to claims under the Rehabilitation Act). Plaintiff relies on the "regarded as" theory of liability. (Opp'n at 8-10.) A plaintiff is "regarded as" disabled when "subjected to an" adverse employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *See* 42 U.S.C.A. § 12102(3)(A) (West 2012).[4]

---

[4] Contrary to plaintiff's framing of the issue, for a "regarded as" claim the perceived disability need not "limit or [be] perceived to limit a major life activity." *See* 42 U.S.C.A. § 12102(3)(A) (West 2012). The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, abrogated the Supreme Court's holding in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), that an individual was "regarded as" disabled only if the employer "mistakenly believes that [she] has a[n] . . . impairment *that substantially limits one or more major life activities*" or "mistakenly believes that an actual, nonlimiting impairment *substantially limits one or more major life activities*." *Id.* at 489 (emphasis added); *see Pinckney v. Fed. Reserve Bank of Dallas*, 2013 WL 5461873, *9 (W.D. Tex. Sept. 30, 2013) ("The ADAAA makes clear that the 'regarded as' disabled prong no longer requires a showing that the employer perceived the individual to be substantially limited in a major life activity.").

Plaintiff has not satisfied this test. First, plaintiff has not pleaded facts sufficient to establish that she was "regarded as" disabled by Ms. Campbell.[5] The Court initially observes that most of plaintiff's allegations are conclusory and therefore are not afforded any presumption of truth.[6] However, plaintiff's allegation that Ms. Campbell asked her whether she "had seen a mental health professional because 'a medical condition might possibly be triggering'" her disagreements with and actions toward co-workers (FAC at 15, 33) presents a closer question. Prior to the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, several circuits were in agreement that an employer's request or even requirement that an employee seek a mental or physical health evaluation would not alone support an inference that the employee was regarded as disabled. *See Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 515-16 (3d Cir. 2001); *Wright v. Ill. Dep't of Corr.*, 204 F.3d 727, 732 (7th Cir. 2000); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999); *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 647 (2d Cir. 1998); *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998). Although no circuit has reaffirmed its position since the Amendments went into effect, the Court is of the opinion that the pre-Amendments caselaw remains persuasive. As the Eighth Circuit explained, "a request for an evaluation is not equivalent to treatment of the

---

[5] Plaintiff also argues that statements by DCHA employees other than Ms. Campbell demonstrated that she was "regarded as" mentally disabled by DCHA. (*See* Opp'n at 10-11.) However, plaintiff admits that these employees "were not directly involved in the adverse action." (*Id.* at 11.) Therefore, even assuming that their alleged statements or actions established that they regarded plaintiff as mentally disabled, their perceptions are irrelevant because, as non-decisionmakers, they could not have been the "sole" or "but-for" cause of any adverse action. *See Velez v. Janssen Ortho LLC*, 389 F. Supp. 2d 253, 264 (D.P.R. 2005) (concluding that statements by non-decisonmakers, including that plaintiff was "crazy," were "unrelated to the decisional process at issue" and bore "no legal significance to the instant controversy").

[6] For instance, plaintiff's allegation that "[o]n or around August 26, 2011, Ms. Campbell regarded Plaintiff as having a mental disability or impairment that substantially limits one or more major life activities" (FAC at 33) merely parrots the (outdated) elements of the cause of action, and therefore is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

employee as though she were substantially impaired. Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to [Rehabilitation Act] claims . . . ." *Cody*, 139 F.3d at 599 (citation omitted); *see also Tice*, 247 F.3d 515 (holding that a request that an employee seek a health evaluation "only establishes that the employer harbors *doubts* (not certainties) with respect to the employee[] . . . . [and d]oubts alone do not demonstrate that the employee was held in any particular regard"); *Sullivan*, 197 F.3d at 810 ("Given that an employer needs to be able to determine the cause of an employee's aberrant behavior," an employer's request that an employee undergo a mental evaluation "is not enough to suggest that the employee is regarded as mentally disabled."); *id.* ("[A] defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled.").

Accordingly, plaintiff's allegation that Ms. Campbell asked her whether she "had seen a mental health profession recently, because 'a medical condition might possibly be triggering'" her actions (FAC at 15) is insufficient, even under liberal pleading standards, to raise the inference that Ms. Campbell regarded plaintiff as disabled, for a human resource officer's mere suggestion that an employee seek counseling is insufficient to establish that the plaintiff is regarded as disabled. *See Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 220-21 (E.D. Pa. 2010) (concluding that allegations that supervisor suggested plaintiff seek counseling "does not support the inference that defendant regarded plaintiff as disabled").

Second, plaintiff has failed to adequately allege the existence of an adverse employment action. For purposes of a discrimination claim, an employment action is adverse if it causes "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"

14

*Taylor v. Small,* 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). "[M]ere idiosyncracies of personal preference are not sufficient to state an injury. . . . Purely subjective injuries, such as dissatisfaction with a reassignment . . . or public humiliation or loss of reputation . . . are not adverse actions." *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C. Cir. 2002).

Here, plaintiff does not allege that her September 21, 2011 transfer to the Stoddart Terrace led to any loss of salary, grade level, or benefits. Accordingly, her transfer is properly characterized as a "lateral transfer." *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007). "A lateral transfer, without more, does not constitute an adverse employment action . . . ." *Jones v. D.C. Dep't of Corr.*, 429 F.3d 276, 281 (D.C. Cir. 2005); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) ("To be sure, reassignment of job duties is not automatically actionable."). "The fact that job duties may be different or less desirable is not enough." *Sykes v. Napolitano*, 710 F. Supp. 2d 133, 142 (D.D.C. 2010). Instead, a lateral transfer constitutes an adverse action only if the "reassignment left [the employee] with 'significantly different'-and diminished-supervisory and programmatic responsibilities," *Czekalski*, 475 F.3d at 364, or otherwise "qualitatively inferior work requiring . . . less skill or knowledge." *Baloch v. Kempthorne,* 550 F.3d 1191, 1197 (D.C. Cir. 2008). Stated differently, a "transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Brown v. Brody,* 199 F.3d 446, 456 (D.C.Cir.1999) (internal quotation marks omitted).

Plaintiff alleges that prior to the transfer, she "handled the budget for the Public Affairs Department and completed timesheets for her department on a daily basis," but while at Stoddert Terrace "she primarily answered telephones." (FAC at 16.) While these allegations suffice to

15

demonstrate that her positions entailed different responsibilities, even construed liberally they fail to demonstrate that her new responsibilities were either "significantly diminished . . . and different," *Czekalski*, 475 F,3d at 364, or otherwise "constitute[d] qualitatively inferior work requiring any less skill or knowledge." *See Baloch,* 550 F.3d at 1197; *see also Hollabaugh v. Office of the Architect of the Capitol*, 847 F. Supp. 2d 57, 64 (D.D.C. 2012) (concluding that brief reassignment from elevator repair to inventory control did not constitute adverse action where the reassignment "did not culminate in qualitatively inferior work requiring any less skill or knowledge"); *Sykes*, 710 F. Supp. 2d at 142-44 (finding that changes in responsibility following plaintiff's transfer to new position in Secret Service did not amount to "greatly diminished" duties required for an adverse action).

Moreover, plaintiff's allegation that Stoddert Terrace is a "dangerous housing project" does not render the transfer adverse. Transfers to more dangerous, less desirable, locations "without more[,] do not constitute adverse employment actions." *See Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 282 (D.D.C. 2011); *see also Forkkio,* 306 F.3d at 1130–31.

Accordingly, because plaintiff failed to plead facts sufficient to support her claim that she was "regarded as" disabled by Ms. Campbell and that her detail to Stoddert Terrace constituted an adverse employment action, the Court will dismiss Count V with prejudice.[7]

---

[7] The Court emphasizes that even if plaintiff could state a claim, she would still face significant hurdles at summary judgment. First, plaintiff would have to demonstrate that Ms. Campbell detailed her to Stoddert Terrace because of her perceived disability, rather than because of instances of misconduct that Ms. Campbell perceived as disability-related. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.6 (2003) (rejecting the suggestion that an employer who subjects an employee to an adverse action because of disability-related misconduct violates the ADA or, by inference, the Rehabilitation Act); *see also Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 465 (4th Cir. 2012) ("[M]isconduct – even misconduct related to a disability – is not itself a disability and may be a basis for dismissal." (internal quotation marks omitted)). Second, plaintiff would have to demonstrate that her perceived disability was the "sole" or "but-for" cause of her transfer, *i.e.*, that plaintiff's past misconduct had *nothing* to do with her transfer. *See Gard*, 752 F. Supp. 2d at 36. Considering plaintiff's workplace-related misconduct detailed in her complaint (*see, e.g.*, FAC at 5-6), as well as the fact that Ms. Campbell suggested plaintiff consider seeking a mental health evaluation because "a medical condition might possibly be triggering"

## C. Retaliation under the Rehabilitation Act (Counts VI-VII)

Plaintiff seeks to amend her complaint to add Counts VI and VII, both of which allege retaliation claims against DCHA under the Rehabilitation Act. (SAC at 34-35.) Plaintiff pleads both Counts VI and VII as alternatives to Count V. (*Id.*) Like Count V, plaintiff fails to state a cognizable Rehabilitation Act claim under either Count VI or Count VII, and for that reason, the Court will deny plaintiff's motion for leave to amend.

The Rehabilitation Act incorporates the ADA's anti-retaliation provision. *See* 29 U.S.C. § 794(d); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010). Thus, to establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff generally must show that "she suffered (i) a materially adverse action (ii) because . . . she had brought or threatened to bring a discrimination claim" under the Act. *Baloch*, 550 F.3d at 1198; *see also Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).

Under her proposed Count VI, plaintiff alleges that that DCHA retaliated against her for bringing this suit by detailing her to Stoddert Terrace on May 1, 2013, only three days after suit was filed. (SAC at 23-24, 34.) DCHA argues plaintiff's retaliation claim under Count VI fails because plaintiff did not plead facts sufficient to establish that her "detail" amounted to a "materially adverse employment action." (Opp'n to Mot. to Amend at 2-3.) The Court agrees.

"An employment action is materially adverse where it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68). As with her first detail to Stoddert Terrace in September 2011, plaintiff does not allege that this detail led to any a loss of salary, grade level, or benefits. Accordingly, this

---

her instances of alleged misconduct (FAC at 15), it is highly unlikely that plaintiff's claims would survive summary judgment.

transfer is also properly characterized as a "lateral transfer," *Czekalski*, 475 F.3d at 364, which, "without more, does not constitute an adverse employment action sufficient to establish a prima facie case of retaliation." *Jones*, 429 F.3d at 281. In contrast to her claim under Count V, plaintiff does not allege that any (let alone any significant) change in responsibilities accompanied this transfer. Instead, plaintiff's only factual allegation regarding this transfer is that Stoddert Terrace is located "in a dangerous neighborhood." (SAC at 24.) But, as noted above, while the transfer to a more dangerous location may be undesirable from plaintiff's point of view, such transfers do not constitute adverse employment actions. *See Ndondji*, 768 F. Supp. 2d at 282. Thus, plaintiff's proposed Count VI would not survive a motion to dismiss, and the Court will deny plaintiff's motion to amend her complaint to add Count VI on futility grounds.

Plaintiff alleges in her proposed Count VII that DCHA retaliated against her for filing her prior suit against DCHA by demoting her "from Grade 11, Step 7 . . . to Grade 9 . . . with no designated 'step.'" (SAC at 34-35.) Although filing a Rehabilitation Act claim qualifies as a "protected activity" and a demotion qualifies as a "materially adverse action," plaintiff has failed to plead facts sufficient to support a finding of causation. Plaintiff filed the prior case on August 27, 2012, s*ee Douglas v. D.C. Housing Auth. et al*, 12-cv-1418, Dkt. No. 1 (D.D.C. Aug. 27, 2012), and "learned that she had been demoted" on January 7, 2013. (SAC at 35.) As DCHA points out, however, the notice of personnel action that plaintiff attaches to her complaint shows that she was demoted from Grade 11, Step 7 to Grade 9 on February 2, 2012 – more than six months before she undertook any protected activity by filing the complaint. (*See* Personnel Action, Feb. 2, 2012 [Dkt. No. 10-20].) "The fact that the alleged retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff." *Lewis v. Dist. of Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C.

2009).[8]  Accordingly, the proposed Count VII fails to state a claim for retaliation, and plaintiff cannot amend her complaint to include Count VII.

### E. Retaliation under the D.C. Whistleblower Protection Act (Count IV)

In Count IV, plaintiff brings a state-law retaliation claim against DCHA under the D.C. Whistleblower Protection Act.  (FAC at 29-32.)  When, as here, the federal-law claims providing the Court with original jurisdiction have been dismissed, the Court "may decline to exercise supplemental jurisdiction" over the remaining state-law claims.  28 U.S.C. § 1367(c)(3).  In deciding "whether to exercise jurisdiction," the Court "should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* at 350 n.7.

In light of the dismissal of plaintiff's federal-law claims, and the Court's denial of plaintiff's motion to amend her complaint to add Counts VI and VII, there is no reason for the Court to retain jurisdiction over plaintiff's state-law claim under the D.C. Whistleblower Protection Act.  The Court will therefore dismiss Count IV without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

---

[8] Plaintiff argues (in the context of her D.C. Whistleblower Protection Act claim) that "the date written onto the demotion document was falsified, or 'backdated,' specifically with the intent of avoiding this present allegation of retaliation . . . ."  (Opp'n at 6.)  Because plaintiff did not allege falsification of the personnel document in her complaint, and a plaintiff cannot amend her complaint through an opposition to a defendant's motion to dismiss, the Court will not consider plaintiff's assertions regarding falsification.  *See, e.g.*, *King v. Triser Salons, LLC*, 815 F. Supp. 2d 328, 332 (D.D.C. 2011) ("Although plaintiff's opposition to the motion to dismiss proffers additional facts, the Court may only consider the facts set forth in the complaint when evaluating a motion to dismiss.")

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [Dkt. No. 14] will be granted and plaintiff's motion to amend [Dkt. No. 17] will be denied as futile. The Court will dismiss plaintiff's federal-law claims in the First Amended Complaint with prejudice because she has failed to state a claim upon which relief can be granted. Further, the Court declines to exercise supplemental jurisdiction and dismisses plaintiff's state-law claim without prejudice. An Order consistent with this Memorandum Opinion is being issued on this date.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 25, 2013